FREDERICK SCHNEIDER, Respondent, *v.* THE SECOND AVENUE RAILROAD COMPANY et al., Appellants.

Plaintiff, a passenger in one of the cars of defendant, the S. A. R. R. Co., was injured by a collision of the car with one belonging to defendant, the H., W. S. & P. F. R. R. Co., whose track crossed that of the former company. In an action to recover damages plaintiff's evidence was to the effect that the driver of the car in which he was when within sixty-five feet of the crossing of the two tracks could see the other track west,

the direction the car thereon was approaching, seventy-five feet from the intersection, and when within forty feet could see one hundred and forty feet west; he was driving at about six miles an hour. *Held*, that the question as to the negligence of the driver, in not stopping the car, was properly submitted to the jury.

Where a party, by his own negligence, has placed himself in a position of peril, and being called upon in a sudden exigency to act, mistakes his best course through an error in judgment, he is not thereby relieved from the original negligence, if it appreciably contributed to cause injury to another.

The claim of negligence on the part of defendant, the H., W. S. & P. F. R. R. Co., was an insufficient inspection of the running gear of its car, a brake rod of which broke because of a defect in the iron, and so prevented the stopping of the car. After a witness on its part had testified as to the mode of inspection, a witness called by the other defendant testified that this mode of examination would not discover a latent defect. Upon cross-examination by plaintiff the witness was permitted to testify, under objection and exception on the part of the S. A. R. R. Co., that such mode of examination was not a proper one. *Held*, error.

Also *held*, that conceding the fact that the inspection made was insufficient to detect the particular flaw, it did not follow that the inspection was not adequate to discharge the duty said defendant owed to others not its passengers.

The distinction between the degree of care a carrier of passengers owes to its passengers, and that it owes to others not passengers, pointed out.

(Argued April 14, 1892; decided April 26, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 2, 1891, which affirmed a judgment in favor of plaintiff, entered upon a verdict and also affirmed orders denying motions for a new trial.

This action was brought to recover damages for injuries received by plaintiff while a passenger on a car of the Second Avenue Railroad Company, through a collision with a car of the Houston, West Street and Pavonia Ferry Railroad Company.

The following is the opinion in full:

"There was ample evidence to submit to the jury upon the question of the negligence of the driver of the Second Avenue car. He was driving south, down the avenue, at the ordinary rate of speed, some six miles an hour. The track of the Houston Street Railroad Company, laid through 36th street,

crosses Second avenue, and the cars in 36th street run only from west to east.

"Upon the part of the plaintiff it was shown by a witness who had made the measurements, that when the Second avenue car was sixty-five feet north of the north rail of the track of the 36th street road, he could see 74 feet west of the intersection of the two sets of tracks, and when 40 feet north he could see 140 feet west, and when 31 feet north he could see west to Third avenue.

"He knew that cars were liable to come from the west at any time and it would be a question for the jury whether he ought not under such circumstances to so reduce the speed of his horses as to have them and his car under immediate control in case of any exigency requiring him to check instantly the speed of the car.

"It would seem to be a fair question for a jury to determine whether the driver of a horse car is not guilty of negligence in approaching the crossing of another railroad track at a rate of speed which would not enable him to stop his car almost instantly upon discovering another car approaching on such track. And if he do approach at such a slackened rate of speed, it would also be a question for the jury whether he was not guilty of negligent conduct in attempting the experiment of crossing in front of the other car, when to remain where he was and await its crossing would result in absolute safety.

"The driver of the Second avenue car testified that he did not see the approach of the other car until his horses were almost upon the track to be crossed. The evidence on the part of the plaintiff shows that if he had looked he would have seen the car much earlier. It is not claimed he must look only in one direction, or that he must look first to the west. But at some point of time when looking would have disclosed the presence of the other car he ought to have looked and his rate of speed should at that time have been such that if it appeared in the slighest degree dangerous to go ahead he would have been able to stop and permit the other car to pass his own tracks in safety before himself venturing to cross the other tracks. It may very well be that after the driver of the Second avenue car discovered the other car approaching, he

did all he could to avoid the accident, considering his nearness to the tracks and the rate of speed at which he was going. Upon the evidence it was at least a fair question for the jury to say whether the driver of the Second avenue car was not negligent in sooner seeing the other car, or in driving so fast that when he did discover it the best thing to be done was to endeavor to first pass the other tracks by increasing still more his rate of speed. The lives and limbs of passengers should not be hazarded by such a practice.

" We think there was no error in submitting to the jury the question of the negligence of the Second Avenue company. If the party by his own negligence has placed himself in a situation of peril, and being called upon in a sudden exigency to act, mistakes his best course through an error in judgment, he is not thereby relieved. He is not in such case held for his error in judgment in failing to adopt the best means of escaping from a sudden peril, but he is liable for the original negligence which placed him in such peril, provided that negligence appreciably contributed to the happening of the accident.

" The judgment as to the Second Avenue company defendant must be affirmed, with costs.

"As to the Houston Street company defendant, other considerations are involved.

" One charge of negligence against this defendant consisted in an alleged insufficient inspection of the running gear of the defendant's car. The Houston Street company defendant had proved how the inspection was made, and claimed it was sufficient, and that the reason the difficulty in the iron was not discovered was because it was a latent defect or flaw, in regard to which no inspection would reveal the defect, and even if some kind of an inspection might have revealed it, the inspection as proved was in fact sufficient. In order to show negligence on the part of this company defendant and to shift the charge from its own shoulders, the Second Avenue road called a witness who swore that the examination of the cars testified to by the Houston Street company defendant would not reveal a latent flaw. The examination spoken of was by getting down on the hands and knees of the examiner and looking at the gear underneath the car. Upon the cross-examination

by the plaintiff the witness said that striking the iron with a hammer and sounding it and examining it across with a hammer would reveal such a defect as existed in this iron. It was also claimed that the inspection proved was not such as was generally in use by railroad companies in November, 1888, prior to this accident.

" The witness was then asked the question whether that was an adequate way for the examination of these rods. This was objected to as calling for the conclusion of the witness. The objection was overruled and the defendant excepted. The witness answered that it was not. Continuing the examination the witness was asked whether this sort of examination as described was a proper and adequate examination, and, after objection and exception, he answered it was not. It is now contended that the objection was not specific enough. .Considering the objection already made to the first question and those made to this (the whole being part of one subject), we think the objection was specific enough to raise the question of the admissibility of the evidence as calling for the opinion of the witness upon a non-expert subject.

" We think the objections should have been sustained. The witness had already pronounced his opinion upon those facts which were of a nature to permit of the introduction of expert evidence, and the two questions above stated called for an opinion upon the very point which was at issue, viz., the sufficiency of the inspection, and the decision of that fact depended upon additional considerations. This decision put the witness in the place of the jury and allowed him to determine whether the defendant had or had not made an adequate inspection. That was not the province of an expert witness upon the question then in issue. It is wholly different from asking an expert witness whether a vessel was properly loaded. Stating facts showing how it was loaded would not enable a non-expert to say whether such loading was proper or improper. That fact could only be proved by opinions of those conversant with such matters, and such an opinion could not be formed by one who was not an expert by evidence as to the manner of loading.

" The rule of liability requires a carrier of passengers to

exercise the greatest diligence to secure them safe transporta-tion. But the carrier is not an insurer of their safety. The plaintiff was not a passenger of the Houston Street Company, and hence the high degree of vigilance demanded of a carrier was not demanded in this case. Whether the inspection which the defendant proved was made of this car on the morn-ing of and preceding the accident, fulfilled the duty incumbent upon it towards third parties, was, under the facts in this case, a question for the jury alone. It might be that the inspection actually was insufficient to detect the particular flaw in the iron which the defendant gave evidence existed therein. Con-ceding such fact, it did not follow as a legal conclusion that the inspection was not adequate, under all the circumstances, to amount to a performance of the duty which the defendant owed to others than its passengers. To decide that question involved a consideration of some other matters, among which are the following appearing in the evidence: The brake-rod had been manufactured by a proper and skillful person; it had been made out of first-class material, possibly not the best iron in the world, but iron that was regarded as entirely fit for its proposed use; it had been in actual use for a few months and had fully answered all the requirements of its position; the ordinary and average time for the use of such a rod was several years; it was inspected on the morning in question by a man who, so far as appears, was competent for the duty, and who looked along its length and got down on his hands and knees for that purpose; the brake itself was tested by being wound up several times, and the shoes were seen to come together and clasp the wheels as tight as was necessary; the company had been organized since 1874, and during the whole of that time no fracture of a brake-rod had occurred, and of course no accident had resulted therefrom; the grades upon the route were for the most part nearly level; to make a daily inspection of the hundreds of cars belonging to the company, which were in actual daily use, such as was spoken of by one of the witnesses, viz., hauling each car over a pit and having a man go under it and examine the whole length of the brake-chains and rods with a hammer in the most minute and pains-taking manner, might be and probably was practically impossi-

ble for want of time to accomplish it, and it does not appear that any such kind of inspection was actually made with regard to the cars of any company which were in daily use and which were not sent in the shops for repairs; and finally the more or less remote probability of any serious accident following as a result from the fracture of a brake-rod or chain. All these circumstances, and perhaps others not mentioned. were proper to be taken into account by the jury before arriving at a decision of the question whether the inspections which the defendant made were or were not adequate as a discharge. of the duty it owed third parties.    Yet upon a question which involved, among others, such considerations as these, the witness was allowed to give his opinion.    It is clear that the. question called for an opinion upon many matters which were not remotely connected with science, skill or particular knowledge not in the possession of the average citizen, but on the. contrary it asked for a conclusion of the witness upon a mass. of facts and circumstances not of a nature to require or permit expert evidence, and which it was the peculiar and exclusive province of the jury to weigh and deduce the appropriate. inferences therefrom.

" I have found no case and the counsel for the plaintiff has. cited none which holds that a witness under a such a state of facts may be permitted to place himself in the position of the jury and drawing his own inferences from many facts which are not of an expert nature, determine the very question which. is for the jury alone to decide.

" The counsel for plaintiff now insists that the defendant was not harmed because, from certain other facts testified to by the witness, it was clear that no adequate inspection was made.    As already stated, that was a question for the jury. The facts testified to by the witness were in no particular con-. nected with the facts above alluded to, and the inference to be. drawn from the one set of facts might very possibly be altered by a consideration of the other set above stated.    The ques-. tion as to the sufficiency of the inspection was one of the vital issues in the case.    We are by no means assured that the evidence did not do great harm, and we cannot, therefore, over-. look the error of its admission.

" We must, therefore, reverse the judgment as against the Houston street defendant and grant a new trial, with costs to abide the event, while as to the Second avenue defendant the judgment must be affirmed, with costs."

*Chas. E. Miller* and *Payson Merrill* for appellants.

*G. Washbourne Smith* for respondent. .

PECKHAM, J., reads for modification of judgment.
All concur.
Judgment accordingly.